TIMOTHY J. YOO (State Bar No. 155531)
DAVID B. GOLUBCHIK (State Bar No. 185520)
JULIET Y. OH (State Bar No. 211414)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244
Emails: tjy@lnbrb.com; dbg@lnbrb.com; jyo@lnbrb.com

Proposed Attorneys for Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>HARVARD GRAND INVESTMENT, INC.,<br><br>     Debtor and Debtor in Possession, | Case No.: 2:10-bk-31833-BR<br><br>Chapter 11 Case<br><br>**NOTICE OF MOTION AND MOTION FOR ENTRY OF AN ORDER: (A) APPROVING COMPROMISE OF CONTROVERSY BETWEEN DEBTOR AND SECURED CREDITOR; (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS; (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF CHANG HUN (JAMES) LEE IN SUPPORT THEREOF**<br><br>Date:  [TO BE SET]<br>Time:  [TO BE SET]<br>Place:  255 East Temple Street<br>       Courtroom 1668<br>       Los Angeles, CA 90012 |

**PLEASE TAKE NOTICE** that Harvard Grand Investment, Inc., a California corporation, the debtor and debtor in possession in the above-captioned chapter 11 bankruptcy case (the "Debtor"), has filed its Motion For Entry Of An Order: (A) Approving Compromise Of Controversy Between Debtor And Secured Creditor; (B) Authorizing The Sale Of Substantially All Of The Debtor's Assets Free And Clear Of Liens, Claims, Encumbrances And Interests; (C) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases; And (D) Granting Related Relief (the "Motion")

The Debtor operates a Doubletree Hotel Carson Civic Plaza (the "Hotel") in Carson, California. The Hotel is a full-service hotel with 224 guestrooms, as well as entertainment, dining and meeting amenities. The Hotel is conveniently located adjacent to the Carson Conference Center and close to the Home Depot Center Sports & Entertainment Complex. The Hotel employs approximately 80 people to carry out its business operations.

While the Hotel's ideal location and facilities have made it a "go-to" location in the Carson area, the Hotel suffered reduced occupancy as a result of the slowdown in the general economy, especially the tourist and conference industry. Based on reduced occupancy, revenue and cash flow suffered, making the Debtor unable to remain current with its regular obligations to its primary secured creditor, Shinhan Bank America (the "Bank"), which exceed $22 million. While the Debtor used best efforts to negotiate a modification of its obligations to the Bank, the Bank proceeded with its foreclosure efforts and scheduled a foreclosure sale for June 1, 2010. The Debtor determined that the commencement of this case was necessary and proper in order to preserve the value of the estate for the benefit of all creditors, while preserving jobs of its approximately 80 employees.

While the Debtor has preserved the value of its assets through commencement of this case, the Debtor continues to be faced with critical issues relating to its operations and the value of its assets. Specifically, the Debtor licenses the "Doubletree" nameplate pursuant to a franchise license agreement with Doubletree's parent, Hilton. In the ordinary course of business, Hilton conducts quality inspections of its franchisees in order to ensure that its franchisees

1    comply with Hilton's standards.  Prior to the commencement of this case, Hilton provided notice

2    to the Debtor that the Debtor failed Hilton's quality assurance inspection.  Based on the

3    foregoing, Hilton issued a notice to the Debtor that the license agreement will terminate effective

4    as of July 1, 2010, and providing no opportunity for the Debtor to cure such default.  The vast

5    majority of the Hotel's value is Hilton's reservation service which is slated to be turned off on

6    July 1, 2010.  Such a result would be an unmitigated disaster for this estate.  While the Debtor

7    believes that the Hotel is worth at least $22 million under the "Doubletree" name, in the event

8    that the license is terminated, the value will drop by at least 40%.  If this occurs, unsecured

9    creditors will very likely receive no distribution whatsoever from this estate.

10        The Proposed Transaction

11        Shortly after commencement of this case, the Debtor was approached by a group of hotel

12    investors/operators which have formed an entity called Carson Hotel, LLC, a Delaware limited

13    liability company ("Buyer").  Buyer notified the Debtor that it is in the midst of completing an

14    acquisition of the Bank's secured debt, including any and all claims the Bank holds against the

15    Debtor.  Buyer further notified the Debtor that it wishes to acquire substantially all assets of the

16    Debtor and continue uninterrupted operations related to the Hotel, all without any contingencies

17    related to the Hilton franchise agreement or the Debtor's license to operate under the

18    "Doubletree" name.  Following extensive negotiations, the parties have agreed to the following

19    transaction:

20        1.    Substantially all assets of the Debtor, excluding avoidance actions and other

21              assets not germane to the Hotel's operations, will be transferred to Buyer free and

22              clear of liens, claims and encumbrances, but subject to real property tax liens to

23              the extent any such liens were properly perfected prior to commencement of the

24              Debtor's case;

25        2.    All claims and causes of action held by Buyer arising out of its acquisition of the

26              Bank's debt, including personal guaranties made to the Bank, will be deemed

27              waived and satisfied; and

28

3.    Buyer shall provide sufficient funds to the estate to satisfy, <u>in full</u>, all known and allowed administrative expenses (excluding professional fees) and all known and allowed unsecured claims against the estate.

In addition to the foregoing, Buyer and Chang Hun (James) Lee, the founder and principal of the Debtor, have agreed to enter into a consulting agreement, pursuant to which Buyer will pay to Mr. Lee directly the total sum of $700,000.

<u>It is imperative for any sale to be consummated substantially in advance of the July 1, 2010 scheduled termination of the license to allow Buyer to obtain a temporary license from Hilton.  Moreover, it hardly has to be pointed out that a proposal which promises full payment to all allowed unsecured claimants is of unique value to this estate.</u>  The Debtor believes that no creditors will object to the proposed sale based on the fact that Buyer has agreed to provide sufficient funds to the estate to satisfy all allowed unsecured claims in full.  Moreover, a traditional bankruptcy auction is unnecessary given that all allowed unsecured claims will be paid in full and the equity holder is a party to and supports the transaction.  Based on the foregoing, the Debtor submits that a hearing on the Motion should be scheduled on shortened notice.

Compelled by its urgent need to complete this transaction prior to termination of the Hilton franchise agreement and mindful of the additional time it will take to formally document the transaction, the Debtor is "starting the clock" for purposes of Bankruptcy Rules 2002 and 6004 by submitting a countersigned a Letter of Intent ("LOI") from the Buyer pending definitive documentation.  A true and correct copy of the LOI is attached to the accompanying Declaration of Chang Hun (James) Lee as Exhibit "E".  The Debtor believes that the LOI accurately and sufficiently describes the proposed transaction such that all parties in interest will have adequate notice for purposes of Bankruptcy Rules 2002 and 6004.  Pending the hearing on the Motion, the Debtor and Buyer expect to complete and execute definitive agreements related thereto which will incorporate the material terms set forth in the LOI.  The Debtor will file such documents

1    with the Court upon completion, which is anticipated to occur by the time of hearing on the

2    Motion.

3              This Motion is based upon 11 U.S.C. §§ 105(a), 363(c), 363(f) and 365, Federal Rules of

4    Bankruptcy Procedure 2002, 6004, 6006 and 9019, Local Bankruptcy Rule 6004-1, the

5    accompanying Memorandum of Points and Authorities and the Declaration of Chang Hun

6    (James) Lee, the entire record of this bankruptcy case, the statements, arguments and

7    representations of counsel to be made at the hearing on the Motion, and any other evidence

8    properly presented to the Court at, or prior to, the hearing on the Motion.

9              **WHEREFORE**, based upon all of the foregoing, the Debtor respectfully request that the

10   Court:

11             1.       approve the sale and compromise transaction incorporating the material terms set

12   forth in the LOI, which will be supplemented by definitive agreements by the time of hearing on

13   the Motion;

14             2.       find that Buyer is a good faith buyer entitled to all of the protections afforded by

15   Section 363(m) of the Bankruptcy Code;

16             4.       approve the Debtor's assumption and assignment to the Buyer of executory

17   contracts and unexpired leases;

18             5.       waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d);

19   and

20             6.       grant such other and further relief as the Court deems just and proper.

21   Dated: June __, 2010                              HARVARD GRAND INVESTMENT, INC.

22

23
                                                       By:__/s/ David B. Golubchik___
24                                                          DAVID B. GOLUBCHIK
                                                           LEVENE, NEALE, BENDER, RANKIN
25                                                            & BRILL L.L.P.
                                                           Proposed Attorneys for Debtor and
26                                                         Debtor in Possession

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS AND BACKGROUND

**A.    Background**

1.    Harvard Grand Investment, Inc., the debtor and debtor in possession herein ("Debtor"), commenced this case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code on May 28, 2010.  The Debtor continues to operate its business and manage its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2.    The Debtor operates a Doubletree Hotel Carson Civic Plaza (the "Hotel") in Carson, California.   The Hotel is a full-service hotel with 224 guestrooms, as well as entertainment, dining and meeting amenities.  The Hotel is conveniently located adjacent to the Carson Conference Center and close to the Home Depot Center Sports & Entertainment Complex.  The Hotel employs approximately 80 people to carry out its business operations.

3.    While the Hotel's ideal location and facilities have made it a "go-to" location in the Carson area, the Hotel suffered reduced occupancy as a result of the slowdown in the general economy, especially the tourist and conference industry.  Based on reduced occupancy, revenue and cash flow suffered, making the Debtor unable to remain current with its regular obligations to its primary secured creditor, Shinhan Bank America (the "Bank"), which exceed $22 million.  While the Debtor used best efforts to negotiate a modification of its obligations to the Bank, the Bank proceeded with its foreclosure efforts and scheduled a foreclosure sale for June 1, 2010.  The Debtor determined that the commencement of this case was necessary and proper in order to preserve the value of the estate for the benefit of all creditors, while preserving jobs of its approximately 80 employees.

**B.    Assets**

4.    As set forth in the Debtor's Schedule A, a true and correct copy of which is attached as Exhibit "A" to the accompanying Declaration of Chang Hun (James) Lee ("Lee

1  Declaration"), the Debtor believes that the value of its real property holdings is approximately

2  $21,500,000.

3       5.    As set forth in the Debtor's Schedule B, a true and correct copy of which is

4  attached as Exhibit "B" to the Lee Declaration, the Debtor's personal property assets have a

5  book value of approximately $5.6 million.

6       6.    The foregoing valuations are based on a going concern value of the Debtor as a

7  Doubletree hotel.  In the event that the Doubletree flag is lost, the Debtor believes that its assets

8  would lose at least 40% of their value.

9

10  **C.    Secured Claim**

11       7.    The sole secured creditor with respect to the foregoing collateral is the Bank.

12  Based on the Debtor's records, the current outstanding obligation to the Bank is in excess of

13  $22,000,000.  Additionally, real property taxes of over $266,000 are due and owing.  Such

14  secured claims are set for in Schedule D, a true and correct copy of which is attached as Exhibit

15  "C" to the Lee Declaration.

16

17  **D.    Termination of Hilton License and Need to Sell Assets**

18       8.    While the Debtor has preserved the value of its assets through commencement of

19  this case, the Debtor continues to be faced with critical issues relating to its operations and the

20  value of its assets.  Specifically, the Debtor licenses the "Doubletree" nameplate pursuant to a

21  franchise license agreement with Doubletree's parent, Hilton.  In the ordinary course of business,

22  Hilton conducts quality inspections of its franchisees in order to ensure that its franchisees

23  comply with Hilton's standards.  Prior to the commencement of this case, Hilton provided notice

24  to the Debtor that the Debtor failed Hilton's quality assurance inspection.  Based on the

25  foregoing, Hilton issued a notice to the Debtor that the license agreement will terminate effective

26  as of July 1, 2010, and providing no opportunity for the Debtor to cure such default.  The vast

27  majority of the Hotel's value is Hilton's reservation service which is slated to be turned off on

28

July 1, 2010.  Such a result would be an unmitigated disaster for this estate.  While the Debtor believes that the Hotel is has substantial value under the "Doubletree" name, in the event that the license is terminated, as discussed above, the value will drop by at least 40%.  If this occurs, unsecured creditors will very likely receive no distribution whatsoever from this estate.

**E.    Proposed Transaction**

9.    Shortly after commencement of this case, the Debtor was approached by a group of hotel investors/operators which have formed an entity called Carson Hotel, LLC, a Delaware limited liability company ("Buyer").  Buyer notified the Debtor that it is in the midst of completing an acquisition of the Bank's secured debt, including any and all claims the Bank holds against the Debtor.  Buyer further notified the Debtor that it wishes to acquire substantially all assets of the Debtor and continue uninterrupted operations related to the Hotel, all without any contingencies related to the Hilton franchise agreement or the Debtor's license to operate under the "Doubletree" name.  Following extensive negotiations, the parties have agreed to the following transaction:

    a.    Substantially all assets of the Debtor, excluding avoidance actions and other assets not germane to the Hotel's operations, will be transferred to Buyer free and clear of liens, claims and encumbrances, but subject to real property tax liens to the extent any such liens were properly perfected prior to commencement of the Debtor's case;

    b.    All claims and causes of action held by Buyer arising out of its acquisition of the Bank's debt, including personal guaranties made to the Bank, will be deemed waived and satisfied; and

    c.    Buyer shall provide sufficient funds to the estate to satisfy, in full, all known and allowed administrative expenses (excluding professional fees) and all known and allowed unsecured claims against the estate.

10. In addition to the foregoing, it is anticipated that Buyer will seek the assumption and assignment of the Debtor's unexpired leases and executory contracts. Attached as Exhibit "D" to the Lee Declaration is the Debtor's Schedule G, listing the proposed executory contracts and unexpired leases as well as proposed cure amounts based on the Debtor's records. In light of the fact that Buyer is still analyzing the agreements, Debtor proposes that Buyer be provided the right to file a notice with the Court, not later than two (2) days before the sale hearing, setting forth which agreements the Buyer seeks to be assumed and assigned, the balance of which will be rejected upon the closing of the sale transaction.

11. Moreover, Buyer and Chang Hun (James) Lee, the founder and principal of the Debtor, have agreed to enter into a consulting agreement, pursuant to which Buyer will pay to Mr. Lee directly the total sum of $700,000.

12. It is imperative for any sale to be consummated substantially in advance of the July 1, 2010 scheduled termination of the license to allow Buyer to obtain a temporary license from Hilton. Moreover, it hardly has to be pointed out that a proposal which promises full payment to all allowed unsecured claimants is of unique value to this estate. The Debtor believes that no creditors will object to the propose sale based on the fact that Buyer has agreed to provide sufficient funds to the estate to satisfy all allowed unsecured claims in full. Moreover, a traditional bankruptcy auction is unnecessary given that all allowed unsecured claims will be paid in full and the equity holder is a party to and supports the transaction. Based on the foregoing, the Debtor submits that a hearing on the Motion should be scheduled on shortened notice.

13. Compelled by its urgent need to complete this transaction prior to termination of the Hilton franchise agreement and mindful of the additional time it will take to formally document the transaction, the Debtor is "starting the clock" for purposes of Bankruptcy Rules 2002 and 6004 by submitting a countersigned a Letter of Intent ("LOI") from the Buyer pending definitive documentation. A true and correct copy of the LOI is attached to the accompanying Declaration of Chang Hun (James) Lee as Exhibit "E". The Debtor believes that the LOI

1   accurately and sufficiently describes the proposed transaction such that all parties in interest will

2   have adequate notice for purposes of Bankruptcy Rules 2002 and 6004.  Pending the hearing on

3   the Motion, the Debtor and Buyer expect to complete and execute definitive agreements related

4   thereto which will incorporate the material terms set forth in the LOI.  The Debtor will file such

5   documents with the Court upon completion, which is anticipated to occur by the time of hearing

6   on the Motion.

7

8   II.

9   <u>SALE OF ASSETS SHOULD BE APPROVED</u>

10

11   A.   <u>The Court Should Authorize the Debtor to Sell Its Assets to the Buyer Pursuant to the
     Terms of the LOI</u>.

12   Section 363(b) of the Bankruptcy Code provides that a debtor "after notice and a hearing,

13   may use, sell or lease, other than in the ordinary course of business, property of the estate."  To

14   approve a use, sale or lease of property other than in the ordinary course of business, the court

15   must find "some articulated business justification."  <u>See</u>, <u>e.g.</u>, <u>In re Martin (Myers v. Martin)</u>, 91

16   F.3d 389, 395 (3d Cir. 1996) citing <u>In re Schipper (Fulton State Bank v. Schipper)</u>, 933 F.2d 513,

17   515 (7th Cir. 1991); <u>Comm. of Equity SEC Holders v. Lionel Corp.</u> (<u>In re Lionel Corp.</u>), 722

18   F.2d 1063, 1070 (2d Cir. 1983); <u>In re Abbotts Dairies of Pennsylvania, Inc.</u>, 788 F.2d 143 (3d

19   Cir. 1986) (implicitly adopting the "sound business judgment" test of <u>Lionel Corp.</u> and requiring

20   good faith); <u>In re Delaware and Hudson Ry. Co.</u>, 124 B.R. 169 (D. Del. 1991) (concluding that

21   the Third Circuit adopted the "sound business judgment" test in the <u>Abbotts Dairies</u> decision).

22   In the Ninth Circuit, "cause" exists for authorizing a sale of estate assets if it is in the best

23   interest of the estate, and a business justification exists for authorizing the sale.   <u>In re</u>

24   <u>Huntington, Ltd.</u>, 654 F.2d 578 (9th Cir. 1981); <u>In re Walter</u>, 83 B.R. 14, 19-20 (9th Cir. B.A.P.

25   1988).  The Ninth Circuit has also held that section 363 allows the sale of substantially all assets

26   of a debtor's bankruptcy estate after notice and a hearing.  <u>In re Qintex Entertainment, Inc.</u>, 950

27   F.2d 1492 (9th Cir. 1991).

28

1    In determining whether a sale satisfies the business judgment standard, courts have held

2  that: (1) there be a sound business reason for the sale; (2) accurate and reasonable notice of the

3  sale be given to interested persons; (3) the sale yield an adequate price (i.e., one that is fair and

4  reasonable); and (4) the parties to the sale have acted in good faith.  <u>Titusville Country Club v.</u>

5  <u>Pennbank (In re Titusville Country Club)</u>, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991); <u>see</u> <u>also</u>,

6  <u>In re Walter</u>, 83 B.R. at 19-20).

7    The Debtor submits that the proposed sale to Buyer comports with each of these four

8  criteria and demonstrates that the Debtor's business judgment to proceed with the sale is sound.

9

10    1.    <u>Sound Business Purpose</u>.

11    There must be some articulated business justification, other than appeasement of major

12  creditors, for using, selling or leasing property out of the ordinary course of business before the

13  bankruptcy court may order such disposition under Section 363(b).  <u>In re Lionel Corp.</u>, 722 F.2d

14  at 1070.  The Ninth Circuit Bankruptcy Appellate Panel in <u>Walter v. Sunwest Bank</u> (<u>In re</u>

15  <u>Walter</u>), 83 B.R. 14, 19 (9th Cir. B.A.P. 1988) has adopted a flexible case-by-case test to

16  determine whether the business purpose for a proposed sale justifies disposition of property of

17  the estate under Section 363(b).  In <u>Walter</u>, the Bankruptcy Appellate Panel adopting the

18  reasoning of the Fifth Circuit in <u>In re Continental Airlines, Inc.</u>, 780 F.2d 1223 (5th Cir. 1986)

19  and the Second Circuit in <u>In re Lionel Corp.</u>, <u>supra</u>, articulated the standard to be applied under

20  Section 363(b) as follows:

21
22
23
24
25
26
27
> Whether the proffered business justification is sufficient depends
> on the case.  As the Second Circuit held in <u>Lionel</u>, the bankruptcy
> judge should consider all salient factors pertaining to the
> proceeding and, accordingly, act to further the diverse interests of
> the Debtor, creditors and equity holders, alike.  He might, for
> example, look to such relevant facts as the proportionate value of
> the asset to the estate as a whole, the amount of elapsed time since
> the filing, the likelihood that a plan of reorganization will be
> proposed and confirmed in the near future, the effect of the
> proposed disposition on future plans of reorganization, the
> proceeds to be obtained from the disposition vis-a-vis any
> appraisals of the property, which of the alternatives of use, sale or

28

1                   lease the proposal envisions and, most importantly perhaps,
                 whether the asset is increasing or decreasing in value.  This list is

2                   not intended to be exclusive, but merely to provide guidance to the
                 bankruptcy judge.

3

4  In Re Walter, 83 B.R. at 19-20, *citing* In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th

5  Cir. 1986).

6         As explained above, prior to the commencement of this case, Hilton provided notice to

7  the Debtor that the Debtor failed Hilton's quality assurance inspection.  Based on the foregoing,

8  Hilton issued a notice to the Debtor that the license agreement will terminate effective as of July

9  1, 2010, and providing no opportunity for the Debtor to cure such default.  The vast majority of

10  the Hotel's value is Hilton's reservation service which is slated to be turned off on July 1, 2010.

11  Such a result would be an unmitigated disaster for this estate.  While the Debtor believes that the

12  Hotel is has substantial value under the "Doubletree" name, in the event that the license is

13  terminated, as discussed above, the value will drop by at least 40%.  If this occurs, unsecured

14  creditors will very likely receive no distribution whatsoever from this estate.

15         The sale transaction, free and clear of any contingencies related to the license, provides

16  the estate with sufficient cash to pay all claims in full.  The Debtor believes that this result is in

17  the overwhelming best interest of the estate and all creditors and, therefore, justified by the

18  sound business purposes described above, satisfying the first requirement for a sale under

19  Section 363(b) of the Bankruptcy Code.

20

21         2.       Accurate and Reasonable Notice.

22         In connection with a proposed sale under Section 363 of the Bankruptcy Code, "four

23  pieces of information must be presented to the creditors.  The notice should: place all parties on

24  notice that the debtor is selling its business; disclose accurately the full terms of the sale;

25  explain the effect of the sale as terminating the debtor's ability to continue in business; and

26  explain why the proposed price is reasonable and why the sale is in the best interest of the

27  estate."  In re Delaware & Hudson Railway Co., 124 B.R. 169, 180 (D. Del. 1991).  A notice is

28  sufficient if it includes the terms and conditions of the sale and if it states the time for filing

1    objections.  In re Karpe, 84 B.R. 926, 930 (Bankr. M.D. Pa. 1988).  The purpose of the notice is

2    to provide an opportunity for objections and hearing before the court if there are objections.  Id.

3        Rule 6004(a) of the Federal Rules of Bankruptcy Procedure provides in pertinent part

4    that notice of a proposed sale not in the ordinary course of business must be given pursuant to

5    Fed. R. Bankr. P. 2002(a)(2), (c)(1), (i) and (k), and, if applicable, in accordance with section

6    363(b)(2) of the Bankruptcy Code.  Fed. R. Bankr. P. 6004(a).  Rule 2002(a)(2) requires at least

7    20 days' notice by mail of a proposed sale of property of the estate other than in the ordinary

8    course of business, unless the Court for cause shown shortens the time or directs another

9    method of giving notice.  Fed. R. Bankr. P. 2002(a)(2) (emphasis added).  Rule 2002(c)(1)

10   requires that the notice of a proposed sale include the date, time and place of any public sale, the

11   terms and conditions of any private sale, and the time fixed for filing objections.  It also

12   provides that the notice of sale or property is sufficient if it generally describes the property.

13   Fed. R. Bankr. P. 2002(c)(1).  Rule 2002(i) requires that the notice be mailed to committees

14   elected pursuant to 11 U.S.C. § 705 or appointed pursuant to 11 U.S.C. § 1102.[1]  Fed. R. Bankr.

15   P. 2002(i).  Rule 2002(k) requires that the notice be given to the United States Trustee.  Fed. R.

16   Bankr. P. 2002(k).

17       Rule 6004(c) provides that a motion for authority to sell property free and clear of liens

18   or other interests must be made in accordance with Rule 9014 and must be served on the parties

19   who have liens or other interests in the property to be sold.  Fed. R. Bankr. P. 6004(c).

20       Local Bankruptcy Rule 9013-1(d)(2) requires that, unless otherwise ordered by the

21   Court, a notice of motion and motion be served at least 21 days before the hearing on the date

22   specified in the notice.  L.B.R. 9013-1(d)(2).

23       In addition, Local Bankruptcy Rule 6007-1(f) requires that an additional copy of the

24   Notice be submitted to the Clerk of the Bankruptcy Court together with a document Form 6004-

25   2 at the time of filing for purposes of publication.  L.B.R. 6007-1(f).

26       The Debtor has complied with all of the above provisions of the Bankruptcy Code, the

27   _____

28   [1] As of the date of this Motion, no official committee of unsecured creditors has been appointed in this case.

1    Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules, subject to the

2    modifications to service ordered by this Court.  Other than the timing of the notice of the

3    hearing on the Motion, which the Debtor anticipates will be modified by this Court based on

4    sufficient "cause", the Debtor has complied with Fed. R. Bankr. Pro. 6004(a) and 2002(a)(2),

5    (c)(1), (i) and (k), because the Notice that has been filed contemporaneously herewith, which

6    includes the date time and place of the sale and the deadline for objecting thereto, was served on

7    the United States Trustee, all of the Debtor's known creditors, and all parties requesting special

8    notice.  The Debtor has complied with Rule 6004(c), because the Notice and the Motion were

9    also served upon the parties who have alleged liens or interests in the assets to be sold.  The

10   Debtor has complied with the requirements of Local Bankruptcy Rule 6007-1(f) because the

11   Debtor has filed the Notice and Form 6004-2 with the Clerk of the Bankruptcy Court.

12        The Debtor submits that the foregoing satisfies the requirements of Bankruptcy Rules

13   6004(a) and (c).  The Debtor has complied with all noticing procedures required by the

14   Bankruptcy Rules.

15

16        3.    Fair and Reasonable Price.

17        In order to be approved under Section 363(b) of the Bankruptcy Code, the purchase price

18   must be fair and reasonable.  Coastal Indus., Inc. v. U.S. Internal Revenue Service (In re Coastal

19   Indus., Inc.), 63 B.R. 361, 368 (Bankr. N.D. Ohio 1986).  Several courts have held that "fair

20   value" is given for property in a bankruptcy sale when at least 75% of the appraised value of

21   such property is paid.  See In re Karpe, 84 B.R. at 933; In re Abbotts Dairies of Pennsylvania,

22   Inc., 788 F.2d 143, 149 (3d Cir. 1986); Willemain v. Kivitz, 764 F.2d 1019 (4th Cir. 1985); In re

23   Snyder, 74 B.R. 872, 878 (Bankr. E.D. Pa. 1987); In re The Seychelles, Partnership and Genius

24   Corp. v. Banyan Corp., 32 B.R. 708 (N.D. Tex. 1983).  However, the Debtor also realizes that its

25   "main responsibility, and the primary concern of the bankruptcy court, is the maximization of the

26   value of the asset sold."  In re Integrated Resources, Inc., 135 B.R. 746, 750 (Bankr. S.D.N.Y.

27   1992), aff'd, 147 B.R. 650 (S.D.N.Y. 1992).  "It is a well-established principle of bankruptcy law

28

that the objective of bankruptcy rules and the [debtor's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate." In re Atlanta Packaging Products, Inc., 99 B.R. 124, 131 (Bankr. N.D. Ga. 1988); see also In re Wilde Horse Enterprises, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ["in any sale of estate assets, the ultimate purpose is to obtain the highest price for the property sold"].

As discussed above and the Debtor's Schedules A and B, the book value of the Debtor's assets totals approximately $27,100,000. Pursuant to the LOI, the sale of the Debtor's assets will result in a full satisfaction of the Bank's secured debt (approx. $22,300,000), payment of (or taking subject to) real property taxes (approx. $266,000) and payment of estate claims (approx. $1,000,000). As a result, the total consideration has a value of approximately $23,566,000, or approximately 87% of book value. On the other hand, if a sale does not close by July 1, 2010, the value of the Debtor's holdings will drop by at least 40%. If this occurs, there will be no value remaining in the estate for the benefit of the unsecured creditors herein. Based on the foregoing, the Debtor submits that the price to be paid by the Buyer is fair and reasonable.

4.    Good Faith.

When a bankruptcy court authorizes a sale of assets pursuant to Section 363(b)(1), it is required to make a finding with respect to the "good faith" of the purchaser. In re Abbotts Dairies, 788 F.2d at 149. Such a procedure ensures that Section 363(b)(1) will not be employed to circumvent the creditor protections of Chapter 11, and as such, it mirrors the requirement of Section 1129, that the Bankruptcy Court independently scrutinizes the debtor's reorganization plan and makes a finding that it has been proposed in good faith. Id. at 150.

"Good faith" encompasses fair value, and further speaks to the integrity of the transaction. In re Wilde Horse Enterprises, 136 B.R. at 842. With respect to the Debtor's conduct in conjunction with the sale, the good faith requirement "focuses principally on the element of special treatment of the Debtor's insiders in the sale transaction." See In re Industrial Valley Refrig. and Air Cond. Supplies, Inc., 77 B.R. 15, 17 (Bankr. E.D. Pa. 1987). With respect

1    to the buyer's conduct, this Court should consider whether there is any evidence of "fraud,

2    collusion between the purchaser and other bidders or the [debtor], or an attempt to take grossly

3    unfair advantage of other bidders." In re Abbotts Dairies, 788 F.2d at 147, In re Rock Indus.

4    Mach. Corp., 572 F.2d 1195, 1198 (7th Cir. 1978); In re Wilde Horse Enterprises, Inc., 136 B.R.

5    at 842; In re Alpha Industries, Inc., 84 B.R. 703, 706 (Bankr. D. Mont. 1988).  In short, "[l]ack

6    of good faith is generally determined by fraudulent conduct during the sale proceedings."  In re

7    Apex Oil Co., 92 B.R. 847, 869 (Bankr. E.D. Mo. 1988), citing In re Exennium, Inc., 715 F.2d

8    1401, 1404-05 (9th Cir. 1983).

9         In In re Filtercorp, Inc., 163 F.3d 570 (9th Cir. 1998), the Ninth Circuit set forth the

10   following test for determining whether a buyer is a good faith purchaser:

11   > A good faith buyer "is one who buys 'in good faith' and 'for
12   > value.'"  [citations omitted.]  [L]ack of good faith is [typically]
     > shown by 'fraud, collusion between the purchaser and other
13   > bidders or the trustee,' or an attempt to take grossly unfair
     > advantage of other bidders.'"  [citations omitted.]
14
     Filtercorp, 163 F.3d at 577.

15        The Ninth Circuit made clear in Filtercorp that this standard for determining good faith is
16   applicable even when the buyer is an insider.

17        Neither the Buyer nor any parties affiliated with the Buyer are "insiders" of the Debtor or

18   has received any special treatment from the Debtor.  No common identity of directors or

19   controlling stockholders exists between Buyer and the Debtor.  The Debtor is not aware of any

20   fraud, collusion or attempt to take unfair advantage of any bidders or interested parties.  The LOI

21   between Buyer and the Debtor was extensively negotiated at arm's length with all parties

22   involved acting in good faith.  Based on the foregoing, the Debtor submits that the Court should

23   find that Buyer is a good faith purchaser entitled to all of the protections afforded by Section

24   363(m) of the Bankruptcy Code.

25

26   B.    Section 363(f) of the Bankruptcy Code Permits the Debtor's Sale of Assets to Be Free and
           Clear of Any Liens, Claims or Interests.

27        Section 363(f) of the Bankruptcy Code provides, in relevant part, as follows:

28

> The trustee may sell property under subsection (b) . . . of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1)    applicable non-bankruptcy law permits the sale of such property free and clear of such interest; ...
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4)    Such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Section 363(f) of the Bankruptcy Code was drafted in the disjunctive.  Thus, a debtor need only meet the provisions of one of the five subsections of Section 363(f) in order for a sale of property to be free and clear of liens, claims and interests.

In this case, Buyer, as the only secured creditor, has consented to the proposed transaction pursuant to the LOI.  As a result, Section 363(f)(2) has been satisfied.

C.    The Court Should Authorize the Debtor to Assume and Assign to the Buyer Its Executory Contracts and Unexpired Leases.

Barring exceptions not herein relevant, Sections 365(a) and 1107(a) authorizes a debtor in possession, "subject to the Court's approval, ... [to] assume or reject any executory contract or unexpired lease of the debtor."  A debtor in possession may assume or reject executory contracts for the benefit of the estate.  In re Klein Sleep Products, Inc., 78 F.3d 18, 25 (2d. Cir. 1996); In re Central Fla. Metal Fabrication, Inc., 190 B.R. 119, 124 (Bankr. N.D. Fla. 1995); In re Gucci, 193 B.R. 411, 415 (S.D.N.Y. 1996).  In reviewing a debtor in possession's decision to assume or reject an executory contract, a bankruptcy court should apply the "business judgment test" to determine whether it would be beneficial to the estate to assume it.  In re Continental Country Club, Inc., 114 B.R. 763, 767 (Bankr. M.D. Fla. 1990); see also In re Gucci, 193 B.R. at 415. The business judgment standard requires that the court follow the business judgment of the debtor unless that judgment is the product of bad faith, whim, or caprice.  In re Prime Motors

1   Inns, 124 B.R. 378, 381 (Bankr. S.D. Fla. 1991), *citing* Lubrizol Enterprises v. Richmond Metal

2   Finishers, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986).

3           Pursuant to Section 365(f)(2) of the Bankruptcy Code, a debtor may assign its executory

4   contracts and unexpired leases, provided the debtor first assumes such executory contracts and

5   unexpired leases in accordance with Section 365(b)(1), and provides adequate assurance of

6   future performance by the assignee.  Pursuant to Section 365(b)(1), assumption of executory

7   contracts and unexpired leases requires a debtor to: (a) cure any existing defaults under such

8   agreements; (b) compensate all non-debtor parties to such agreements for any actual pecuniary

9   loss resulting from the defaults; and (c) provide adequate assurance of future performance under

10  the contract or lease.  11 U.S.C. § 365(b)(1); see also In re Bowman, 194 B.R. 227, 230 (Bankr.

11  D. Ariz. 1995), In re AEG Acquisition Corp., 127 B.R. 34, 44 (Bankr. C.D. Cal. 1991), *aff'd* 161

12  B.R. 50 (9th Cir. B.A.P. 1993).

13          The assumption and assignment of executory contracts furthers the goals of Chapter 11 of

14  promoting reorganization by balancing the debtor's interest in maximizing the value of its estate

15  against the contracting party's interest in receiving the benefit of its bargain and being protected

16  against default by the debtor after assumption has occurred.  In re Embers 86th Street. Inc., 184

17  B.R. 892, 896 (Bankr. S.D.N.Y. 1995).

18          Debtor's executory contracts and unexpired leases are an important asset of its estate and

19  assumption and assignment of the agreements to the Buyer meets the business judgment standard

20  and satisfies the requirements of section 365 of the Bankruptcy Code. As discussed above, the

21  transactions contemplated by the LOI will provide significant benefits to the Debtor's estate.

22  Because the Debtor cannot obtain the benefits of the LOI without the assumption of the contracts

23  referenced above, the assumption is undoubtedly a sound exercise of the Debtor's business

24  judgment.

25          To the extent any defaults exist under the contracts which the Buyer seeks to be assumed

26  and assigned ("Cure Claims"), Buyer shall pay such Cure Claims in connection with sale closing.

27  In light of the fact that Buyer is still analyzing the agreements, Debtor proposes that Buyer be

28

1 | provided the right to file a notice with the Court, not later than two (2) days before the sale

2 | hearing, setting forth which agreements the Buyer seeks to be assumed and assigned, the balance

3 | of which will be rejected upon the closing of the sale transaction.  Moreover, to the extent

4 | necessary, the Buyer will provide evidence of its ability to adequately ensure its future

5 | performance under the Assumed Contracts at or before the Auction.

6 |

7 | D.      The Debtor Requests the Court to Waive the 14-Day Waiting Periods Set Forth in

8 | Bankruptcy Rules 6004(h) and 6006(d).

9 |       Bankruptcy Rule 6004(h) provides, among other things, that an order authorizing the use,

10 | sale or lease of property is stayed until the expiration of 14 days after entry of the Court order,

11 | unless the Court orders otherwise.  Bankruptcy Rule 6006(d) has a similar provision with respect

12 | to an order approving of a debtor's assumption and assignment of unexpired leases and executory

13 | contracts.

14 |       In order to facilitate the most expeditious sale closing possible given all of the time

15 | exigencies in this case, the Debtor requests that the Order approving this transaction be effective

16 | immediately upon entry by providing that the 14-day waiting periods of Bankruptcy Rule

17 | 6004(h) and 6006(d) are waived.  This will enable the Debtor to consummate its sale in the most

18 | expeditious manner possible.

19 |

20 |                                   III.

21 |               COMPROMISE OF CONTROVERSY SHOULD BE APPROVED

22 | Bankruptcy Rule 9019(a) provides that:

23 |
24 |           On motion by the [debtor in possession] and after notice and
            hearing, the court may approve a compromise or settlement.
25 |           Notice shall be given to creditors, the United States trustee, the
            debtor and indenture trustees as provided in [Bankruptcy Rule]
26 |           2002 and to any other entity as the court may direct.

27 | Fed. R. Bankr. P. 9019(a).

28 |

The Court of Appeals for the Ninth Circuit has long recognized that "[t]he bankruptcy court has great latitude in approving compromise agreements." Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988).  "The purpose of a compromise agreement is to allow the [debtor in possession] and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." Martin v. Kane (In re A & C Properties), 784 F.2d 1377, 1380-81 (9th Cir. 1986), cert. denied 479 U.S. 854 (1986). Accordingly, in approving a settlement agreement, the Bankruptcy Court need not conduct an exhaustive investigation of the claims sought to be compromised.  See United States v. Alaska National Bank (In re Walsh Constr., Inc.), 669 F.2d 1325, 1328 (9th Cir. 1982).  Rather, it is sufficient that the Bankruptcy Court find that the settlement was negotiated in good faith and is reasonable, fair, and equitable. See In re A & C Properties, supra, 784 F.2d at 1381.

The Court of Appeals for the Ninth Circuit has identified the following factors for consideration in determining whether a proposed settlement agreement is reasonable, fair, and equitable:

> (a)    the probability of success in the litigation;
>
> (b)    the difficulties, if any, to be encountered in the matter of collection;
>
> (c)    the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and
>
> (d)    the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

In re A & C Properties, supra, 784 F.2d at 1381 (the "A & C Factors").

Consideration of these factors does not require the Bankruptcy Court to determine whether a settlement presented is the best one that could possibly have been achieved.  Rather, the Bankruptcy Court need only canvass the issues to determine whether the settlement falls "below the lowest point in the zone of reasonableness." Newman v. Stein, 464 F.2d 689, 698 (2d Cir. 1972) (emphasis added), cert. denied sub nom. Benson v. Newman, 409 U.S. 1039 (1972); see also Anaconda-Ericsson Inc. v. Hessen (In re Teltronics Services, Inc.), 762 F.2d 185, 189 (2d Cir. 1985); Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert.

1    denied 464 U.S. 822 (1983).  Finally, although the Bankruptcy Court should give deference to

2    the reasonable views of creditors, "objections do not rule.  It is well established that

3    compromises are favored in bankruptcy." *In re* Lee Way Holding Co., 120 B.R. 881, 891

4    (Bankr. S.D. Ohio 1990).

5        The Debtor submits that the terms of the compromise, as reflected in the LOI, are fair,

6    reasonable, and in the best interests of its creditors and the estate.

7

8        A.     The probability of success in the litigation.

9        At this time, litigation is not an issue.  However, should litigation commence between the

10    Debtor and the Bank (or Buyer as the successor in interest to the Bank), such litigation may be

11    complex and time consuming.  Even if litigation with respect to the loan and the Debtor's

12    obligations thereunder is not initiated, "litigation" in the bankruptcy case has commenced.

13    Specifically, the Bank opposed the Debtor's emergency motion for use of cash collateral.  While

14    the Debtor obtained use of cash collateral, such use was permitted on a limited basis and for a

15    limited time period.  The Debtor anticipates that, but for the compromise incorporated in the LOI

16    wherein the Bank's claims will be deemed satisfied and the estate will be given a release, such

17    litigation will continue.

18

19        B.     The difficulties, if any, to be encountered in the matter of collection.

20        Debtor believes this is not a material issue in this case based on the fact that the Debtor is

21    the party primarily obligated under the loan documents.  As a result, the Debtor would not have

22    to pursue collection efforts as against Bank (or Buyer as the successor to the Bank).

23

24        C.     The complexity of the litigation involved, and the expense, inconvenience, and

25             delay necessarily attending it.

26        The Debtor submits that this factor overlaps factor No. 1 above and Debtor incorporates

27    the forgoing discussion herein.

28

D.     <u>The paramount interest of the creditors and a proper deference to their reasonable views in the premises.</u>

The interests of creditors primarily include the completion of administration of the Debtor's estate. Pursuant to the sale and compromise transaction, Buyer will provide sufficient funds to the estate to pay all claims in full. As a result, the Debtor submits that approval of the compromise, as incorporated in the LOI, is in the overwhelming best interest of all creditors of the Debtor's estate.

IV.

<u>CONCLUSION</u>

**WHEREFORE**, based upon all of the foregoing, the Debtor respectfully request that the Court:

1.     approve the sale and compromise transaction incorporating the material terms set forth in the LOI, which will be supplemented by definitive agreements by the time of hearing on the Motion;

2.     find that Buyer is a good faith buyer entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code;

4.     approve the Debtor's assumption and assignment to the Buyer of executory contracts and unexpired leases;

5.     waive the 14-day stay periods set forth in Bankruptcy Rules 6004(h) and 6006(d); and

6.     grant such other and further relief as the Court deems just and proper.

Dated: June __, 2010                 HARVARD GRAND INVESTMENT, INC.

By:__/s/ David B. Golubchik___
       DAVID B. GOLUBCHIK
       LEVENE, NEALE, BENDER, RANKIN
        & BRILL L.L.P.
       Proposed Attorneys for Debtor and
       Debtor in Possession

1

2

3
## DECLARATION OF CHANG HUN (JAMES) LEE

4

I, Chang Hun (James) Lee, hereby declare as follows:

5

1.      I am over 18 years of age.  I have personal knowledge of the facts set forth below

6
and, if called to testify, would and could competently testify thereto. Unless otherwise stated, all

7
capitalized terms herein have the same meanings as in the Motion.

8

2.      I am the Chairman of the Board of Directors of Harvard Grand Investment, Inc.,

9
the debtor and debtor in possession herein ("Debtor").  Until recently, I was also the President of

10
the Debtor.

11

3.      I formed the Debtor in 2003.  In 2007, I caused the Debtor to acquire the real

12
property and operations which are now Doubletree Hotel Carson Civic Plaza ("Hotel") in

13

14
Carson, California.

15
## A.      Background

16

4.      The Debtor operates a Doubletree Hotel Carson Civic Plaza (the "Hotel") in

17
Carson, California.   The Hotel is a full-service hotel with 224 guestrooms, as well as

18
entertainment, dining and meeting amenities.  The Hotel is conveniently located adjacent to the

19
Carson Conference Center and close to the Home Depot Center Sports & Entertainment

20
Complex.  The Hotel employs approximately 80 people to carry out its business operations.

21

22
5.      While the Hotel's ideal location and facilities have made it a "go-to" location in

23
the Carson area, the Hotel suffered reduced occupancy as a result of the slowdown in the

24
general economy, especially the tourist and conference industry.  Based on reduced occupancy,

25
revenue and cash flow suffered, making the Debtor unable to remain current with its regular

26
obligations to its primary secured creditor, Shinhan Bank America (the "Bank"), which exceed

27
$22 million.  While the Debtor's management used best efforts to negotiate a modification of

28

the Debtor's obligations to the Bank, the Bank proceeded with its foreclosure efforts and scheduled a foreclosure sale for June 1, 2010. The Debtor's management determined that the commencement of this case was necessary and proper in order to preserve the value of the estate for the benefit of all creditors, while preserving jobs of its approximately 80 employees.

**B.    Assets**

6.    As set forth in the Debtor's Schedule A, a true and correct copy of which is attached hereto as Exhibit "A", I believe that the value of the Debtor's real property holdings is approximately $21,500,000.

7.    As set forth in the Debtor's Schedule B, a true and correct copy of which is attached hereto as Exhibit "B", I believe that the Debtor's personal property assets have a book value of approximately $5.6 million.

8.    The foregoing valuations are based on a going concern value of the Debtor as a Doubletree hotel. In the event that the Doubletree flag is lost, I believe that the assets would lose at least 40% of their value.

**C.    Secured Claim**

9.    The sole secured creditor with respect to the foregoing collateral is the Bank. Based on the Debtor's records, the current outstanding obligation to the Bank is in excess of $22,000,000. Additionally, real property taxes of over $266,000 are due and owing. Such secured claims are set for in Schedule D, a true and correct copy of which is attached hereto as Exhibit "C".

**D.    Termination of Hilton License and Need to Sell Assets**

10.    While the Debtor has preserved the value of its assets through commencement of this case, the Debtor continues to be faced with critical issues relating to its operations and the value of its assets.  Specifically, the Debtor licenses the "Doubletree" nameplate pursuant to a franchise license agreement with Doubletree's parent, Hilton.  In the ordinary course of business, Hilton conducts quality inspections of its franchisees in order to ensure that its franchisees comply with Hilton's standards.  Prior to the commencement of this case, Hilton provided notice to the Debtor that the Debtor failed Hilton's quality assurance inspection.  Based on the foregoing, Hilton issued a notice to the Debtor that the license agreement will terminate effective as of July 1, 2010, and providing no opportunity for the Debtor to cure such default.  The vast majority of the Hotel's value is Hilton's reservation service which is slated to be turned off on July 1, 2010.  Such a result would be an unmitigated disaster for this estate.  While I believe that the Hotel has substantial value under the "Doubletree" name, in the event that the license is terminated, as discussed above, the value will drop by at least 40%.  If this occurs, I am certain that unsecured creditors will very likely receive no distribution whatsoever from this estate.

**E.    Proposed Transaction**

11.    Shortly after commencement of this case, the Debtor was approached by a group of hotel investors/operators which have formed an entity called Carson Hotel, LLC, a Delaware limited liability company ("Buyer").  Buyer notified the Debtor that it is in the midst of completing an acquisition of the Bank's secured debt, including any and all claims the Bank holds against the Debtor.  Buyer further notified the Debtor that it wishes to acquire substantially all assets of the Debtor and continue uninterrupted operations related to the Hotel, all without any contingencies related to the Hilton franchise agreement or the Debtor's license to operate

under the "Doubletree" name.  Following extensive negotiations, the parties have agreed to the following transaction:

    a.  Substantially all assets of the Debtor, excluding avoidance actions and other assets not germane to the Hotel's operations, will be transferred to Buyer free and clear of liens, claims and encumbrances, but subject to real property tax liens to the extent any such liens were properly perfected prior to commencement of the Debtor's case;

    b.  All claims and causes of action held by Buyer arising out of its acquisition of the Bank's debt, including personal guaranties made to the Bank, will be deemed waived and satisfied; and

    c.  Buyer shall provide sufficient funds to the estate to satisfy, <u>in full</u>, all known and allowed administrative expenses and all known and allowed unsecured claims against the estate.

12.    In addition to the foregoing, it is anticipated that Buyer will seek the assumption and assignment of the Debtor's unexpired leases and executory contracts.  Attached hereto as Exhibit "D" is the Debtor's Schedule G, including proposed executory contracts and unexpired leases as well as proposed cure amounts based on the Debtor's records.  In light of the fact that Buyer is still analyzing the agreements, I propose that Buyer be provided the right to file a notice with the Court, not later than two (2) days before the sale hearing, setting forth which agreements the Buyer seeks to be assumed and assigned, the balance of which will be rejected upon the closing of the sale transaction.

13.    Moreover, Buyer and I have agreed to enter into a consulting agreement and a covenant not to compete, pursuant to which Buyer will pay to me directly the total sum of $700,000.

14.    I believe that it is imperative for any sale to be consummated substantially in advance of the July 1, 2010 scheduled termination of the license to allow Buyer to obtain a temporary license from Hilton.  Moreover, it hardly has to be pointed out that a proposal which promises full payment to all allowed unsecured claimants is of unique value to this estate.  I believe that no creditors will object to the propose sale based on the fact that Buyer has agreed to provide sufficient funds to the estate to satisfy all allowed unsecured claims in full.  Moreover, a traditional bankruptcy auction is unnecessary given that all allowed unsecured claims will be paid in full and the equity holder is a party to and supports the transaction.

15.    Compelled by its urgent need to complete this transaction prior to termination of the Hilton franchise agreement and mindful of the additional time it will take to formally document the transaction, we are "starting the clock" by submitting a countersigned a Letter of Intent ("LOI") from the Buyer pending definitive documentation.  A true and correct copy of the LOI is attached hereto as Exhibit "E".  I believes that the LOI accurately and sufficiently describes the proposed transaction such that all parties in interest will have adequate notice of the proposed transactions.  Pending the hearing on the Motion, we are working to complete and execute definitive agreements related thereto which will incorporate the material terms set forth in the LOI.

16.    To the best of my knowledge, neither the Buyer nor any parties affiliated with the Buyer are insiders of the Debtor or has received any special treatment from the Debtor.  No common identity of directors or controlling stockholders exists between Buyer and the Debtor.  I am not aware of any fraud, collusion or attempt to take unfair advantage of any bidders or interested parties.  The LOI between Buyer and the Debtor was extensively negotiated at arm's length with all parties involved acting in good faith.

1    I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct to the best of my knowledge.

3    Executed on this 8th day of June 2010, at Carson, California.

Chang Hun (James) Lee

# EXHIBIT A

B6A (Official Form 6A) (12/07)

·

In re    **Harvard Grand Investment, Inc., a California corporation**                Case No.   **2:10-bk-31833-BR**

_____
Debtor

# SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W " "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **Real property (used to operate a full-service Doubletree Hotel) located at: 2 Civic Plaza Drive Carson, California 90745** | | - | **21,500,000.00** | **22,566,972.54** |

|  | Sub-Total > | **21,500,000.00** | (Total of this page) |
|---|---|---|---|
|  | Total > | **21,500,000.00** | |

**0**   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

# EXHIBIT B

B6B (Official Form 6B) (12/07)

In re __Harvard Grand Investment, Inc., a California corporation__    Case No. __2:10-bk-31833-BR__
_____
Debtor

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

__Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.__

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Bank of America** **General operating account** **Account No. 000305461797** | - | 156,983.85 |
| | | **Bank of America** **Payroll account** **Account No. 000305461815** | - | 0.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |

Sub-Total >    **156,983.85**
(Total of this page)

__2__    continuation sheets attached to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Harvard Grand Investment, Inc., a California corporation**                    Case No.  **2:10-bk-31833-BR**
                                                                    ,
                                        Debtor

## SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(e).) | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | **Receivables from officers (book value)** | - | **639,396.86** |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | | **Income tax refund receivable (funds actually received and maintained in segregated account)** | - | **151,297.36** |
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |

                                                            Sub-Total >        **790,694.22**
                                                        (Total of this page)

Sheet  **1**  of  **2**  continuation sheets attached
to the Schedule of Personal Property

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

B6B (Official Form 6B) (12/07) - Cont.

In re    **Harvard Grand Investment, Inc., a California corporation**                    Case No. __2:10-bk-31833-BR__ _____

                                                              Debtor

# SCHEDULE B - PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | | **Liquor license (book value)** | - | **Unknown** |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | | **2001 Ford E250 Van** | - | **7,000.00** |
| | | **2002 Ford E450 Van** | - | **12,000.00** |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | **Furniture and fixtures (book value)** | - | **4,586,674.43** |
| | | **Attached as Exhibit "B-30" is a future depreciation report for the year ended June 30, 2009, which includes a list of the Debtor's furniture and fixtures and their estimated value at cost.** | | |
| 30. Inventory. | | **Food, beverage and housekeeping inventory as of May 1, 2010 (estimated value at cost)** | - | **46,455.75** |
| 31. Animals. | X | | | |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | | **Goodwill (book value)** | - | **Unknown** |

                                                      Sub-Total >   **4,652,130.18**
                                              (Total of this page)
                                                           Total >   **5,599,808.25**

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property                        (Report also on Summary of Schedule)

Software Copyright (c) 1996-2010 - Best Case Solutions - Evanston, IL - www.bestcase.com                    Best Case Bankruptcy

# EXHIBIT C

B6D (Official Form 6D) (12/07)

In re___**Harvard Grand Investment, Inc., a California corporation**_____,    Case No.___**2:10-bk-31833-BR**_____

                                                        Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|
| | | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | | | | | |
| Account No. | | | statutory lien for real property taxes | | | | | |
| **Los Angeles County Tax Collector** P.O. Box 54018 | | - | Real property (used to operate a full-service Doubletree Hotel) located at: 2 Civic Plaza Drive Carson, California 90745 | | | | | |
| | | | Value $            21,500,000.00 | | | | 266,972.54 | 0.00 |
| Account No. | | | Loan secured by vehicle | | | | | |
| **Sang Won Kim** 5513 Rabbit Ridge Road San Diego, CA 92130 | | - | 2001 Ford E250 Van | | | | | |
| | | | Value $             7,000.00 | | | | 5,000.00 | 0.00 |
| Account No. | | | Loan secured by vehicle | | | | | |
| **Sang Won Kim** 5513 Rabbit Ridge Road San Diego, CA 92130 | | - | 2002 Ford E450 Van | | | | | |
| | | | Value $            12,000.00 | | | | 5,000.00 | 0.00 |
| Account No. | | | Real property (used to operate a full-service Doubletree Hotel) located at: 2 Civic Plaza Drive Carson, California 90745 | | | | | |
| **Shinhan Bank America** 330 Fifth Avenue **New York, NY 10001** | | - | | | | X | | |
| | | | Value $            21,500,000.00 | | | | 22,300,000.00 | Unknown |

| | | |
|---|---|---|
| **1**___ continuation sheets attached | Subtotal (Total of this page) | 22,576,972.54 | 0.00 |

B6D (Official Form 6D) (12/07) - Cont.

In re __Harvard Grand Investment, Inc., a California corporation__          Case No. __2:10-bk-31833-BR__
_____,
Debtor

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | Husband, Wife, Joint, or Community — DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | |
| Kim, Shapiro, Park, Lee & Ryu Attn John P. Lee, Esq. 3435 wilshire Bl.m Suite 2050 Los Angeles, CA 90010 | | | **Representing: Shinhan Bank America** | | | | **Notice Only** | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| Rutan & Tucker, LLP Penelope Parmes, Esq. 611 Anton Blvd., 14th Floor Costa Mesa, CA 92626 | | | **Representing: Shinhan Bank America** | | | | **Notice Only** | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal (Total of this page)          **0.00**          **0.00**

Total (Report on Summary of Schedules)          **22,576,972.54**          **0.00**

# EXHIBIT D

B6G (Official Form 6G) (12/07)

In re    **Harvard Grand Investment, Inc., a California corporation**                    Case No. __2:10-bk-31833-BR_____
_____
Debtor

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| ADT<br>PO Box 371956<br>Pittsburgh, PA 15250-7956 | Alarm service - $374.61 per mnth<br>Acct # 01300 10506127 |
| Carson Gift<br>2 Civic Plaza Dr.<br>Carson, CA 90745 | Lease of gift shop space at hotel - revenue of $810.28 per month |
| Coca Cola Bottling Company<br>19875 S. Pacific Gateway Drive<br>Torrance, CA 90502 | Vending machine lease - revenue depends on sales volume |
| Communications Decisions Tech<br>1285 N. Main St #102<br>Mansfield, TX 76063 | Call accounting - $1,958.96 per year |
| CSU Dominguez Hills<br>1000 East Victoria Street<br>Carson, CA 90747 | Sponsorship of CSU Dominguez - $7,500 per year |
| De Lage Landen<br>1111 Old Eagle School Road<br>Wayne, PA 19087 | Copier lease - $299 per month<br>acct # 214291 |
| Ecolab<br>18383 E. Railroad St<br>Rowland Heights, CA 91748 | Dishwasher with booster - $376.84 per month<br>Acct # 1B886 |
| Home Depot Center Soccer License<br>18400 Avalon Blvd. #100<br>Carson, CA 90746 | Sponsorship at Home Dept Center - #4,182.05 per quarter<br>Acct # 203463 |
| Hospitality Solutions Intl (POS)<br>9977 N. 90th Street #300<br>Scottsdale, AZ 85258 | POS system maintenance - $842.70 per quarter<br>Acct # 145726 |
| Lodgenet<br>PO Box 952141<br>Saint Louis, MO 63195-2141 | Guest room cable and movie services - $2,848.50 plus 87% pay per view charges collected<br>Acct # 53187 |
| Mitsubishi Elevators<br>PO Box 10403<br>Pasadena, CA 91189 | Elevator car maintenance agreement - $1,990.35 per month<br>Acct # 1008MT |
| Nationwide Automated Systems, Inc.<br>22048 Sherman Way #111<br>Canoga Park, CA 91303 | ATM lease - revenue of 34% of monthly receipts |

1

_____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

In re    **Harvard Grand Investment, Inc., a California corporation**                    Case No.  **2:10-bk-31833-BR**
_____
                                                Debtor

## SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES
(Continuation Sheet)

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| **Neo Post**<br>**PO Box 45840**<br>**San Francisco, CA 94145-0840** | **Postage machine - $_____ per month**<br>**Acct # 8031384** |
| **Nextora**<br>**9750 Miramar Road #225**<br>**San Diego, CA 92126** | **IT/Network management - $1,484 per month** |
| **Showcase**<br>**19815 Hamilton Ave**<br>**Torrance, CA 90502** | **Business Center - minimum of $299 per month** |
| **South Bay Cooperative, Inc.**<br>**2129 W. Rosecrans Ave**<br>**Gardena, CA 90249** | **Taxi cab service at hotel - revenue of $1,000 per month** |
| **STSN (Bahn)**<br>**7090 S. Union Park Ave #200**<br>**Midvale, UT 84047** | **T1 High Speed Internet - $2,161.25 per month**<br>**Acct # CAHI2** |
| **Travel Click**<br>**2193 Paysphere Circle**<br>**Chicago, IL 60674** | **Marketing resource provider - $____ per quarter**<br>**Acct # 302** |
| **Verizon**<br>**PO Box 2167**<br>**Folsom, CA 95763-2167** | **Cell tower lease - revenue of $21,854.54 per year** |

Sheet  **1**  of  **1**  continuation sheets attached to the Schedule of Executory Contracts and Unexpired Leases

Harvard Grand Investment, Inc.
Cure Schedule for Contracts and Leases

| Name of Other Party to Contract/Lease | Address of Other Party to Contract/Lease | Type of Contract/Lease | Contract/Lease No. | Payment Terms | Cure Amount |
|---|---|---|---|---|---|
| ADT | P.O. Box 371956 Pittsburgh, PA 15250-7956 | Alarm service contract | Account # 01300 10506127 | Debtor pays $374.61 per month | $1,873.05 |
| Carson Gift | 2 Civic Plaza Drive Carson, CA 90745 | Real property lease (Debtor is lessor) | N/A | Lessee pays $810.28 per month | N/A |
| Coca Cola Bottling Company | 19875 S. Pacific Gateway Dr. Torrance, CA 90502 | Vending machine lease (Debtor is lessor) | N/A | Lease payments depend on sales volume | N/A |
| Communications Decisions Tech | 1285 N. Main Street, #102 Mansfield, TX 76063 | Call accounting contract | N/A | Debtor pays $1,958.96 per year | $1,958.96 |
| CSU Dominguez Hills | 1000 East Victoria Street Carson, CA 90747 | Sponsorship contract | N/A | Debtor pays $7,500 per year | $0.00 |
| De Lage Landen | 1111 Old Eagle School Road Wayne, PA 19087 | Equipment lease for copier machine | Account # 214291 | Debtor pays $299 per month | $752.74 |
| Ecolab | 18383 E. Railroad St. Rowland Heights, CA 91748 | Equipment lease for dishwasher | Account # 1B886 | Debtor pays $376.84 per month | $375.20 |
| Home Depot Center Soccer License | 18400 Avalon Blvd., #100 Carson, CA 90746 | Sponsorship contract | Account # 203463 | Debtor pays $4,182.05 per quarter | $0.00 |
| Hospitality Solutions Intl | 9977 N. 90th Street #30 Scottsdale, AZ 85258 | POS system maintenance contract | Account # 145726 | Debtor pays $842.70 per quarter | $842.70 |
| Lodgenet | P.O. Box 952141 St. Louis, MO 63195-2141 | Contract for guestroom cable and movie services | Account # 53187 | Debtor pays $2,848.50 per month, plus 87% of pay per view charges collected | $10,441.82 |

Harvard Grand Investment, Inc.
Cure Schedule for Contracts and Leases

| Name of Other Party to Contract/Lease | Address of Other Party to Contract/Lease | Type of Contract/Lease | Contract/Lease No. | Payment Terms | Cure Amount |
|---|---|---|---|---|---|
| Mitsubishi Elevator | P.O. Box 10403 Pasadena, CA 91189 | Elevator car maintenance contract | Account # 1008MT | Debtor pays $1,990.35 per month | $10,727.15 |
| Nationwide Automated Systems, Inc. | 22048 Sherman Way #111 Canoga Park, CA 91303 | ATM lease (Debtor is lessor) | N/A | Lessee pays 34% of monthly receipts | N/A |
| NeoPost | P.O. Box 45840 San Francisco, CA 94145 | Equipment lease for postage machine | Account # 8031384 | Debtor pays $_____ per month | $1,990.60 |
| Nextora | 9750 Miramar Road #225 San Diego, CA 92126 | IT network management contract | N/A | Debtor pays $1,484 per month | $1,720.95 |
| Showcase Business Centers | 19815 Hamilton Avenue Torrance, CA 90502 | Business center services contract | N/A | Debtor pays at least $299 per month | $685.09 |
| South Bay Cooperative, Inc. | 2129 W. Rosecrans Avenue Gardena, CA 90249 | Taxi cab services contract | N/A | Debtor receives revenue of $1,000 per month | N/A |
| STSN (Bahn) | 7090 S. Union Park Avenue #200 Midvale, UT 84047 | T1 high speed internet services contract | Account # CAHI2 | Debtor pays $2,161.25 per month | $0.00 |
| Travel Click | 2193 Paysphere Circle Chicago, IL 60674 | Marketing resource services provider | Account # 302 | Debtor pays $_____ per quarter | $3,135.00 |
| Verizon | P.O. Box 2167 Folsom, CA 95763-2167 | Cell tower lease (Debtor is lessor) | N/A | Lessee pays $21,854.54 per year | N/A |
| | | | | TOTAL: | $34,503.26 |

# EXHIBIT E

**Carson Hotel, LLC**
c/o Ensemble Real Estate
444 West Ocean Boulevard
Suite 1108
Long Beach, California 90802

June 7, 2010

Harvard Grand Investment, Inc.
c/o Doubletree Hotel Carson Civic Plaza
2 Civic Plaza
Carson, California 90745
Attention: Mr. Chang Hun (James) Lee

Re:    Purchase of Doubletree Hotel Carson Civic Plaza

Dear Mr. Lee:

Carson Hotel, LLC ("*CH*") is pleased to submit this letter of intent (this "*LOI*") to purchase certain assets and executory contracts of Harvard Grand Investment, Inc. (the "*Company*") used in connection with its ownership and operation of the above-captioned hotel (the "*Hotel*"). Such transaction (the "*Proposed Transaction*") would be carried out pursuant to sections 105, 363 and 365 of the United States Bankruptcy Code (the "*Bankruptcy Code*") and Rules 2002, 6004, 9014 and 9019 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") by CH and/or its affiliates. As a preliminary proposal, this LOI is not intended to include all of the terms of the Proposed Transaction or, except as expressly stated, to be legally binding. However, this letter should be helpful in negotiating a set of definitive documents, including but not limited to an APA and Consulting Agreement (as defined below).

As you know, CH has entered into an agreement with Shinhan Bank America, for itself and as agent for the lenders identified therein (the "*Bank*"), to purchase all of the right, title and interest of the Bank in and to its claims against the Company. These claims (collectively, the "*Secured Claim*") arise out of (a) the Promissory Note of the Company dated on or about September 26, 2007 in the original principal amount of $22,260,000 in favor of the Bank, (b) the Business Loan Agreement dated on or about September 26, 2007 between the Company, as borrower, and the Bank, (c) the Commercial Security Agreement dated on or about September 26, 2007 between the Company, as debtor, and the Bank, as secured party, and (d) the deed of trust on the real property underlying the Hotel, recorded in the property records of the County of Los Angeles as document number 20072238021. Our agreement with the Bank to purchase the Secured Claims is subject to certain contingencies.

The key elements of our proposal are as follows:

1.    Bankruptcy Court Process. This LOI and the Proposed Transaction will be subject to approval by the United States Bankruptcy Court for the Central District of California, Los Angeles Division (the "*Bankruptcy Court*"), before which court the Company is a debtor and debtor in possession in voluntary proceedings (the "*Case*") under chapter 11 of the Bankruptcy Code. The

I

Company will be responsible for obtaining all Bankruptcy Court approval necessary to implement the Proposed Transaction. Immediately upon signing this LOI, the Company will file a motion with the Bankruptcy Court (the "*Sale Motion*") seeking an order, in form acceptable to CH in its sole discretion, to approve the sale of assets in connection with the Proposed Transaction free and clear of all liens, interests and encumbrances (excluding any real property taxes and easements) pursuant to Section 363(f) of the Bankruptcy Code and the assumption and assignment of the assumed contracts in connection with the Proposed Transaction pursuant to Section 365 of the Bankruptcy Code, including, among other things, a finding that CH is a purchaser in good faith as described in Section 363(m) of the Bankruptcy Code (the "*Sale Approval Order*"). The Company will request a hearing on the Sale Approval Order at the earliest available date. The parties will use their respective commercially reasonable best efforts to execute and deliver the APA as expeditiously as possible, but in any event on or before by **June 11, 2010.** Promptly after the APA is executed and delivered, but no later than two (2) days before the hearing on the Sale Motion, the Company will file with the Bankruptcy Court a copy of the definitive executed and delivered APA. The closing would take place as soon as practicable after the Sale Approval Order entered by the Bankruptcy Court has become final.

2.    Purchase Price.

(a)    The purchase price for the Hotel would consist of the following:

(i)    the cancellation by CH of the Secured Claim;

(ii)    cash in an amount equal to [$_____], which amount the parties have determined equals the aggregate amount all allowed administrative (excluding professional fees of professionals employed pursuant to order of the Bankruptcy Court), priority and general unsecured claims plus $50,000 (to fund such professional fees and costs) against the Company that are not included among the Assumed Liabilities, which cash shall, upon the closing, be deposited in a client trust account of Levene, Neale, Bender, Rankin & Brill L.L.P. ("*LNBRB*") and be maintained by LNBRB in trust pending further order of the Bankruptcy Court (the "*Unsecured Claims Account*"). Within a reasonable time following satisfaction of all allowed administrative, priority and general unsecured claims in full from the funds held in the Unsecured Claims Account (or another source as the case may be), all remaining funds in the Unsecured Claims Account shall be returned to CH; and

(iii)    assumption of other liabilities of the Company, to be identified in the APA (the "*Assumed Liabilities*").

(b)    The purchase price will based on the timely closing of the Proposed Transaction and CH is unwilling to participate in any auction process. The purchase price assumes the acquisition of substantially all of the assets used in, useful to or arise or arose in connection with the operation of the Hotel as presently operated by the Company, such as real and personal property, inventory, contracts that CH agrees to assume, other contractual rights, intellectual property rights, permits (to the extent transferable), deposits (with the exception of those funds set aside for payroll and sales tax), prepaid expenses (excluding retainers paid to professionals), books and records, claims, set-offs and causes of action, and other assets of used in the operation of the Hotel, as specified in the APA (the "*Assets*").

2

3.    Financing.   CH has cash available on hand, permitted borrowing capacity under existing facilities, or firm financing commitments that together are sufficient to enable payment of all amounts required in connection with the transactions contemplated by this LOI.

4.    Definitive Documents.

(a)    Promptly upon the execution and delivery of this LOI, the parties will negotiate in good faith, and shall use their commercially reasonable best efforts to finalize (i) a definitive and (subject to Bankruptcy Court approval) binding Asset Purchase and Settlement Agreement between the Company and CH setting forth all of the terms and conditions of the Proposed Transaction (the "*APA*") and (ii) a definitive Consulting Agreement between Chang Hun (James) Lee and CH, providing for Mr. Lee's transitional services, and a covenant by Mr. Lee not to compete, in exchange for total consideration of $700,000 in cash (consisting of $500,000 payable upon the closing of the Proposed Transaction and $50,000 per month for each of the four consecutive months thereafter (the "*Consulting Agreement*").

(b)    The APA and the Consulting Agreement shall be on the terms and conditions of this LOI and on such other usual and customary terms and conditions for a Proposed Transaction of this nature or as to which the parties may otherwise agree. Attached to the APA shall be schedules of the Assets and the contracts to be assumed and assigned by the Company to CH (the "*Assumed Contracts*"). Each party will bear its own fees and expenses in connection with the Proposed Transaction.

(c)    The APA is anticipated to contain covenants by the Company that we consider customary in transactions similar to the Proposed Transaction. The APA will provide for the purchase and sale of the Assets on an "AS IS WHERE IS" basis and include the typical representations and warranties by the Company (which shall lapse at the closing) as to, among other matters, organization, corporate power and authority, title and location of the Assets, absence of conflicts, litigation, compliance with applicable laws, consents and approvals, absence of liability for broker's fees, employees, financial statements, permits, and intellectual property.

(d)    In connection with the closing of the Proposed Transaction, CH or an affiliated management company will make offers of employment to all or substantially all employees of the Company involved in the operation of the Hotel (excluding Mr. Lee or Jenny Yang) on terms of employment not materially dissimilar to those currently in effect. The APA would include reasonable approval rights of CH with respect to the material decisions and transactions by the Company prior to Closing.

(e)    The closing of the Proposed Transaction will not be subject to the approval by CH of any further due diligence investigation or any financing condition. The closing of the Proposed Transaction will be subject to (i) the closing of the purchase by CH of the Secured Claims, (ii) the execution and delivery of a mutual general release, including of any liabilities of Mr. Lee as a guarantor under the Bank Loan (including, without limitation, any shareholder loans to Mr. Lee, his affiliates and other officers and directors of the Company), (iii) the dismissal with prejudice of Shinhan Bank v. Harvard Grand Investment, Inc. and Chang Hun Lee, Los Angeles Superior Court, Case No. BC 431824; (iv) the execution and delivery of the Consulting Agreement by Mr. Lee, CH and any guarantors of the consulting fees payable thereunder; (v) entry by the Bankruptcy Court, on or before **June [__], 2010**, of the Sale Approval Order; (vi) the making of all necessary

3

governmental and material third-party filings and obtaining of all necessary governmental and material third-party consents required to consummate the Proposed Transaction and to operate the Company; (vii) the absence of any material adverse effect on the assets, business, condition (financial or otherwise) or results of operations of the Company; and (viii) such other conditions as may be customary and set forth in the APA.

(f)     After closing, CH would expect to provide the Company reasonable access to books, records and other information that is necessary for purposes related to preparing final state and federal income tax returns and to wind down the administration of the Case.

5.     Confidential Transaction. Except as otherwise required under this LOI, CH and the Company agree to keep the Proposed Transaction and negotiations strictly confidential. Neither CH nor the Company will make or issue any public statement or announcement with respect to the Proposed Transaction, the negotiations concerning the Proposed Transaction or the existence or terms of this LOI without the prior written approval of the other, and the discussions between the parties shall remain confidential, except as otherwise required under this LOI and except to the extent that disclosure is otherwise required by law, the rules of any applicable stock exchange or judicial process or as necessary in connection with completion of the financing outlined above. In the event that either party hereto determines disclosure is required by law, the rules of any applicable stock exchange or judicial process, it shall promptly give notice to the other party hereto of such determination and use its best efforts to allow the other party to review a proposed form of public disclosure.

6.     Access to Books and Records. The Company hereby grants CH and such persons the right of reasonable access during ordinary business hours to the Hotel premises and to the Company's employees, consultants and independent contractors and to all the books and records of the Company relating to the Hotel or to the assets or liabilities of the Company and shall furnish to CH and such persons, as promptly as practicable, all other information as CH or any of such persons may reasonably request in furtherance of the Contemplated Transactions. The Company hereby authorizes CH and CH's financial advisors, legal counsel, accountants, consultants, financing sources and other authorized representatives, in CH's discretion and without the involvement or presence of the Company or its agents, to contact and to enter into discussions and negotiate with the Company's landlords, lenders, bankers, vendors, suppliers, strategic business partners and other third parties, including but not limited to governmental bodies, regarding the Proposed Transaction and CH's potential business relationships with such persons following the Closing, and the Company shall provide contact information and other reasonable cooperation to CH in connection with such activities.

7.     Miscellaneous. This LOI is intended to form the basis for the negotiation of a mutually acceptable APA. Unless and until an APA is executed, neither party nor their representatives will be under any legal obligation to the other except for Sections 1, 4(a), 4(b), 5, 6 and this Section 7. This LOI shall expire and cease to have any force or effect upon the first to occur of (a) the execution and delivery by the parties of a definitive APA or (b) on close of business in Los Angeles, California on June __, 2010, if no definitive APA has theretofore been executed and delivered by the parties. Each party will bear its own fees and expenses in connection with this LOI. This LOI constitutes the entire agreement among you, us and/or any of our respective affiliates, and supersedes all prior communications, agreements and understandings, written or oral, with respect to acquisition of the Company by CH or its affiliates; provided, however, that the previously executed

Confidentiality Agreement shall remain in full force and effect to the extent such confidentiality agreement is consistent with the terms of this LOI. This LOI may be signed in counterparts, all of which shall constitute the same agreement, shall be governed by the domestic substantive laws of California, and shall bind and inure to the benefit of the parties and their respective successors and assigns. In the event of any dispute under this LOI, the prevailing party shall be entitled to recover its reasonable legal costs and expenses.

If the foregoing is in accordance with your understanding, please sign this letter in the space indicated below and return it to us for receipt by June 7, 2010, whereupon this letter will become a binding agreement among the parties to the extent set forth in Section 7, and also send an original executed counterpart of this letter to us by overnight courier. The proposal contained herein will expire unless we have received this letter signed by you within the time period provided in the previous sentence or if sooner rejected.

Very truly yours,

Carson Hotel, LLC

By: Kambiz Babaoff,
Its: President and Chief Executive Officer
Manager

The foregoing is hereby
agreed to and accepted:

Harvard Grand Investment, Inc.

By:
Name: CHANG HUN LEE
Title: Chairman

70868-001\DOCS_LA:220932.3